IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL R. SOSSO,                          )
                                          )
            Plaintiff,                    )       Civil Action No. 16-367
                                          )       Chief Magistrate Judge Maureen P. Kelly
            v.                            )
                                          )
ESB BANK and PAPERNICK & GEFSKY,          )       Re: ECF Nos. 2 and 16
                                          )
            Defendants.                   )

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiff Daniel R. Sosso ("Plaintiff") has brought this civil action against Defendants

ESB Bank ("ESB") and Papernick & Gefsky, LLC ("P&G"),[1] a law firm retained by ESB, arising

out of a contractual relationship between Plaintiff, his wife Helen Sosso and ESB.

Presently before the Court are two Motions to Dismiss: one filed by P&G, ECF No. 2,

and one filed by ESB, ECF No. 16. For the following reasons, the Motion to Dismiss submitted

by P&G will be granted with respect to Plaintiff's claim for emotional distress damages sought in

connection with his claim brought pursuant to the Pennsylvania Unfair Practices and Consumer

Protection Law and denied in all other respects; the Motion to Dismiss submitted by ESB will be

granted with respect to Plaintiff's claim for bad faith and the emotional distress damages sought

by Plaintiff under the Pennsylvania Unfair Practices and Consumer Protection Law and denied in

all other respects.

---

[1] Plaintiff has apparently incorrectly named P&G in the Complaint simply as Papernick & Gefsky. See ECF No. 3 at
1, n.1.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Plaintiff obtained a loan for $1,040,000.00 from ESB on October 2, 2006, for which Plaintiff and his wife granted a mortgage on their Lincoln Road property ("the Lincoln Road Mortgage") as security. ECF No. 108 ¶ 25. Sometime thereafter, the Sossos defaulted on the mortgage payments and on April 2, 3013, ESB sent notice to the Sossos of its intent to foreclose on the Lincoln Road property. Id. ¶¶ 31-34. P&G was engaged by ESB to pursue the mortgage foreclosure claim against the Lincoln Road property and to pursue the collection of several other commercial loans given to the Sossos by ESB. Id. ¶¶ 35, 51-57.

Defendants filed a Complaint in Mortgage Foreclosure in the Court of Common Pleas of Allegheny County, Pennsylvania, on January 9, 2014, and, after the Sossos apparently failed to respond to the Complaint, default judgment was entered on April 15, 2014. Id. ¶¶ 35, 46-47. A Sheriff's sale of the Lincoln Road Property was subsequently scheduled to occur on November 3, 2014. Id. ¶ 50.

In the interim, it appears that Plaintiff attempted to cure the default and have the Lincoln Road Mortgage reinstated as provided for therein. Id. ¶¶ 71-87. During the negotiations, disputes arose concerning the reinstatement quote and the amount needed to cure the default, as well as how the proceeds from the sale of the Sossos' other property on Perry Highway would be used relative to the Sossos' various outstanding loans from ESB. Id. ¶¶ 88-89. The Sheriff's sale on the Lincoln Road property was therefore stayed. The Lincoln Road property, however, was nevertheless sold by the Sossos on December 19, 2015. Id. ¶¶ 50, 225. In addition, the Sossos' Perry Highway and Diamond Run properties, which were also mortgaged to ESB as security for

the Sossos' various commercial loans, were sold on October 31, 2014, and November 12, 2014, respectively.  Id. ¶¶ 51-54, 88, 164-66.

Plaintiff alleges that while dealing with ESB and P&G over the reinstatement of the Lincoln Road Mortgage and the sale of his various properties, and up until January 7, 2015, when P&G submitted a letter to Plaintiff's counsel providing a breakdown of how the proceeds from the sales of the Perry Highway and Lincoln Road properties were applied, ESB and P&G repeatedly misrepresented amounts due; included fees and/or taxes that were not incurred or not lawfully due; failed to provide Plaintiff with clarification and/or documentation itemizing amounts allegedly due; improperly rejected Plaintiff's payoff proposal; unilaterally determined how the proceeds from the sales of Plaintiff's properties would be used; improperly applied the proceeds from the closings to ESB's benefit and to the Sossos' detriment; threatened to block the sale of the Lincoln Road property if Plaintiff did not acquiesce to Defendants' demands in connection with the closing of the Perry Highway property; refused to vacate the judgment in the mortgage foreclosure on the Lincoln Road property and continued to threaten the Sossos with foreclosure despite the fact that ESB took $200,000.00 more that was necessary to cure the default and reinstate the Lincoln Road Mortgage; recalculated and reapplied proceeds from the sale of the Perry Highway property after the fact; and kept various funds to which they were not entitled.  Id. *passim*.

Plaintiff filed the instant Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, bringing claims against P&G pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692d, 1692f (Count I); the FDCPA, 15 U.S.C, § 1692e (Count II); and the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. 2270.4(a)

(Count III).  Plaintiff has also brought claims against ESB under the FCEUA, 73 P.S. §§ 2270.4(4), (6)(i) (Count IV); the FCEUA, 27 P.S. § 2270.4(5) (Count V); and a claim for bad faith (Count VII).  In addition, Plaintiff has brought claims against both P&G and ESB under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S.A. § 201-2(4) (xxi) (Count VI).

On March 29, 2016, P&G removed the case to this Court, see ECF No. 1, and on April 5, 2016, P&G filed a Motion to Dismiss Plaintiff's Complaint.  ECF No. 2.  Thereafter, on April 29, 2016, ESB filed its own Motion to Dismiss Plaintiff's Complaint.  ECF No. 16.  Plaintiff filed a Response and Brief to P&G's Motion, ECF Nos. 24, 25, and a separate Response And Brief to ESB's Motion on May 23, 2016.  ECF Nos. 26, 27.  ESB and P&G both filed Reply Briefs, on May 27, 2016, and June 6, 2016, respectively.  ECF Nos. 28, 29.  As such, P&G's Motion and ESB's Motion are both ripe for review.

## II.      STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to

raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265,

286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly

dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to

relief that is plausible on its face," id. at 570, or where the factual content does not allow the

court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224,

231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation

of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts

suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation

that discovery will reveal evidence of the necessary element[s] of his claim").

## III.      DISCUSSION

### A.      P&G's Motion to Dismiss

As previously discussed, Plaintiff has brought claims against P&G under the FDCPA at

Counts I and II of the Complaint and claims for violating the FCEUA and UTPCPL at Counts III

and VI, respectively. P&G asks that all four Counts be dismissed as Plaintiff has failed to state a

claim under any of these statutes.

#### 1.      FDCPA Claims (Counts I and II)

P&G asks that Plaintiff's claims brought under the FDCPA at Counts I and II of the

Complaint be dismissed because Plaintiff has failed to plead sufficient facts to suggest that the

debt at issue in this case is the type of debt subject to the FDCPA. The law is not in dispute.

"The FDCPA prohibits certain practices of a debt collector while attempting to collect a

"debt" as defined in § 1692a(5)." Johns v. Northland Grp., Inc., 76 F. Supp. 3d 590, 597-98

(E.D. Pa. 2014), *citing* <u>Zimmerman v. HBO Affiliate Grp.</u>, 834 F.2d 1163, 1167 (3d Cir. 1987).

"Section 1692a(5) of the FDCPA defines debt as 'any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.'" <u>Id.</u> <u>See</u> <u>Simon v. FIA Card Servs., N.A.</u>, 732 F.3d 259, 265 (3d Cir. 2013). Thus,

> [t]o state a claim under the FDCPA, a plaintiff must establish that: (1) he or she is a consumer who was harmed by violations of the FDCPA; (2) that the "debt" arose out of a transaction entered into primarily for personal, family, or household purposes; (3) that the defendant collecting the debt is a "debt collector;" and (4) that the defendant violated, by act or omission, a provision of the FDCPA.

<u>Johns v. Northland Grp., Inc.</u>, 76 F. Supp. 3d at 597-98.

P&G argues that Plaintiff has failed to state a claim under the FDCPA as the Complaint is devoid of facts to support the second element or that the debt at issue arose out of a transaction entered into primarily for personal, family or household purposes.

Plaintiff, however, has alleged in the Complaint that the debt arose out of a "residential mortgage loan" which was obtained "in order to refinance a prior mortgage loan." ECF No. 1-8 ¶¶ 24-26. Because a debt incurred in order to refinance a prior mortgage is one for personal, family or household use, it appears that Plaintiff has alleged sufficient facts to withstand a motion to dismiss. <u>See</u> <u>WMC Mortg. LLC v. Baker</u>, No. 10-3118, 2012 WL 628003, at *19 (E.D. Pa. Feb. 28, 2012) ("[b]y entering into a loan to refinance the mortgage on their home, the Bakers contracted to purchase services . . . primarily for personal, family, or household purposes within the meaning of the UTPCPL"). <u>See also</u> <u>Brignola v. Home Properties, L.P.</u>, No. 10-3884, 2013 WL 1795336, at *8 (E.D. Pa. Apr. 26, 2013) ("[m]uch like the FDCPA and the FCEUA, a debt collector that engages in unfair debt collection practice under the FCEUA also violates the

UTPCPL").

P&G nevertheless argues that notwithstanding Plaintiff's assertions in the Complaint, the Lincoln Road HUD-1 and the ESB Bank Loan Memorandum, which P&G has submitted in conjunction with its Motion to Dismiss, evidences that the purpose of the loan was, in fact, not for personal, family or household use but was commercial in nature. Specifically, these documents show that the loan would provide Plaintiff and his wife, Helen Sosso, with a "cash-out" payment of $388,742.02, which, according to the Loan Memorandum, Helen Sosso indicated would "be used to invest in business ventures in Florida." ECF No. 2-1 at 1-4. Because the cash-out proceeds constitute 37.5% of the total loan proceeds and were purportedly to be used to invest in business ventures, P&G concludes that the purpose of the debt was for commercial purposes and therefore is not subject to the FDCPA. See St. Hill v. Tribeca Lending Corp., 403 F. App'x 717, 720-22 (3d Cir. 2010) (finding that the primary purpose of the loan was for business and not consumer purposes even though only 29% of the loan went to the plaintiff's business creditors). The Court disagrees.

First, although the Lincoln Road HUD-1 and the ESB Bank Loan Memorandum submitted by P&G clearly relate to the loan at issue, it is not clear that Plaintiff's Complaint is based on these documents and thus unclear whether they are properly considered by the Court in deciding P&G's Motion to Dismiss. See Ickes v. Flanagan, 2008 WL 859183, at * 1 (W.D. Pa. Mar. 31, 2008), quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994), and Steinhardt Group Inc. v. Citicorp, 126 F.3d 144, 145 (3d. Cir 1997) (in deciding a motion to dismiss, "[i]n addition to the allegations contained in the pleadings, the Court may also review "matters of public record, exhibits attached to the complaint and items

appearing in the record of the case," as well as "undisputably authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

Second, the fact that Plaintiff and his wife received cash-out proceeds as a result of the loan does not, standing alone, suggest that the primary purpose of the loan was commercial in nature.

Third, it does not necessarily follow from Mrs. Sosso's alleged statement memorialized in ESB's Loan Memorandum that the cash out payment would be used to invest in business ventures, that the loan was primarily sought for that purpose or, more importantly, that the cash-out proceeds were actually used for investing in business ventures. Under these circumstances, the Court finds that it is unable to conclude at this juncture that the purpose of the debt was commercial in nature and P&G's Motion in this regard will be denied.

### 2.    FCEUA and UTPCPL Claims (Counts III and VI)

The FCEUA, which is Pennsylvania's analogue to the FDCPA, states that "[i]t shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act." 73 Pa. Stat. Ann. § 2270.4(a). See Kaymark v. Bank of Am., N.A., 783 F.3d 168, 182 (3d Cir. 2015), *cert. denied sub nom.* Udren Law Offices, P.C. v. Kaymark, 136 S. Ct. 794 (2016). Further, because "the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 P.S. § 201-9.2, the remedial provision of the UTPCPL, to obtain relief." Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013). See 73 P.S. § 2270.5(a) ("If a debt collector or creditor engages in an unfair or deceptive

debt collection act or practice under this act, it shall constitute a violation of [the UTPCPL"]).

See also Kaymark v. Bank of Am., N.A., 783 F.3d at 182.

> The UTPCPL provides in pertinent part that:
>
> > (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages . . . .

73 Pa. Stat. Ann. § 201-9.2. Thus, like the FDCPA, the FCEUA and the UTPCPL require that the debt at issue be one primarily for personal, family or household purposes.

P&G argues that because Plaintiff has failed to state a claim pursuant to the FDCPA, in that the debt at issue was not a consumer debt, his FCEUA and UTPCPL claims must also fail. The Court, however, has already found that it is unclear at this juncture whether the loan was used for commercial purposes or for personal, family or household use and that Plaintiff should be permitted to go forward with his claim brought under the FDCPA. It therefore follows that Plaintiff should be permitted to go forward with his FCEUA and UTPCPL claims as well. See Yelin v. Swartz, 790 F. Supp. 2d 331, 336 (E.D. Pa. 2011).

P&G also argues, however, that Plaintiff's UTPCPL claim brought at Count VI should be dismissed because Plaintiff cannot recover for emotional distress under the statute and the claim is otherwise barred under the economic loss doctrine.

Plaintiff does not directly address P&G's argument regarding Plaintiff's claim for emotional distress damages except to acknowledge that "[c]laims for emotional distress are typically not compensable under the UTPCPL; as such claims usually 'do not have corresponding

monetary damages.'"  ECF No. 25 at 10, *quoting* <u>Allen v. Wells Fargo, N.A.</u>, 2015 WL 5137953

(2015).  Plaintiff then states that he is not seeking damages under the UTPCPA just for emotional

distress but is also seeking to recover actual loss of monetary damages.  Without saying so,

Plaintiff appears to imply that because he is seeking actual damages, he is somehow entitled to

recover for emotional distress as well.  The law, however, is to the contrary.  <u>See</u> <u>Wenrich v.</u>

<u>Robert E. Cole, P.C.</u>, No. 00-2588, 2001 WL 4994, at *7 (E.D. Pa. Dec. 22, 2000) (predicting

that the Pennsylvania Supreme Court would hold that "actual damages" under the Pennsylvania

UTPCPL exclude emotional distress damages); <u>Krisa v. Equitable Life Assurance Society</u>, 113 F.

Supp. 2d 694, 707 (M.D. Pa. 2000) ("[b]ecause the statute requires an ascertainable loss of

money or property and limits recovery to 'actual damages,' [plaintiff] will not be entitled to

recover emotional distress type damages"); <u>Nelson v. First Card</u>, No. 97-3503, 1998 WL 107236,

at *2 (E.D. Pa. 1998) ("recovery for emotional distress is not permitted under the UTPCPL");

<u>Bryant v. Woodland</u>, 111 B.R. 474, 480 (E.D. Pa. 1990) ("[r]ecovery for emotional distress is not

permitted under the Pennsylvania [UTPCPL] . . . ").  Indeed, even the case to which Plaintiff

cites held that "[c]laims for emotional distress are not compensable under the UTPCPL."  <u>Allen</u>

<u>v. Wells Fargo, N.A.</u>, 2015 WL 5137953, at *9.  Accordingly, to the extent Plaintiff seeks

damages for emotional distress under the UTPCPL, his claim will be dismissed.

      Having found that Plaintiff's claim for emotional distress damages is properly dismissed,

the only remaining damages sought by Plaintiff for violations of the UTPCPL are monetary in

nature which P&G contends are barred by the economic loss doctrine.

> The economic loss doctrine provides that "no cause of action exists for
> negligence that results solely in economic damages unaccompanied by
> physical injury or property damage." *Excavation Technologies, Inc. v.*

> *Columbia Gas Company of Pennsylvania*, 604 Pa. 50, 985 A.2d 840, 841 n.
> 3 (2009) (*citing Adams v. Copper Beach Townhome Communities, L.P.*, 816
> A.2d 301, 305 (Pa.Super.2003)). The doctrine prevents a plaintiff from
> recovering under a tort theory when the plaintiff's only loss is purely
> economic. *Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79,
> 104 (3d Cir.2001) (*citing Duquesne Light Co. v. Westinghouse Elec. Corp.*,
> 66 F.3d 604, 618 (3d Cir.1995)).

Kantor v. Hiko Energy, LLC, 100 F. Supp. 3d 421, 426 (E.D. Pa. 2015). The United States Court of Appeals for the Third Circuit has predicted that the Pennsylvania Supreme Court would extend the doctrine to intentional torts as well. Werwinski v. Ford Motor Co., 286 F.3d 661, 690-81 (3d Cir. 2002) ("Werwinski"). Thus, the economic loss doctrine would bar claims of intentional fraud brought under the UTPCPL except in situations where the fraud occurs outside of the contract. Id. at 671.

Relying on Werwinski, P&G argues that any remedy sought by Plaintiff for P&G's alleged misconduct in connection with the Residential Foreclosure Action "properly lies within the Lincoln Road Mortgage contract." ECF No. 3 at 14. P&G therefore concludes that Plaintiff's UTPCPL claim sounds in contract rather than tort and is therefore barred by the economic loss doctrine. The Court disagrees.

First, the viability of the Third Circuit Court of Appeals' decision in Werwinski has been the subject of much debate as the state of the law in Pennsylvania has changed since Werwinski was decided. Indeed, in Werwinski, finding that "the federal and state decisions interpreting Pennsylvania law shed little light on the question at issue," the Court of Appeals for the Third Circuit relied on decisions from other jurisdictions to decide the issue. Id. at 675-678. See Hughes v. Long, 242 F.3d 121, 128 (3d Cir. 2001) ("[i]n predicting how a matter would be decided under state law we examine: (1) what the Pennsylvania Supreme Court has said in

related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issues we face here").  Since then, however, the Pennsylvania Superior Court decided Knight v. Springfield Hyundai, 81 A.3d 940 (Pa. Super. Ct. 2013) ("Knight"), wherein it expressly held that because the economic loss doctrine bars claims for negligence that result solely in economic damages the doctrine does not operate as a bar to UTPCPL claims which do not sound in negligence.  Id. at 951-52.  See Burke v. Honeywell Int'l, Inc., No. 15-1921, 2016 WL 1639820, at *7 (E.D. Pa. Apr. 26, 2016).  In the wake of Knight, some courts have found that they continue to be bound by Werwinski and apply the economic loss doctrine to UTPCPL claims and others have declined to apply it finding that Knight is controlling.  Cf. McGuckin v. Allstate Fire & Cas. Ins. Co., 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015) (concluding that the economic loss doctrine applied to UTPCPL subsequent to the ruling in Werwinski, despite Pennsylvania Superior Court ruling that the economic loss doctrine does not apply to UTPCPL claims), with Kantor v. Hiko Energy, LLC, 100 F. Supp. 3d at 427-29 ("Werwinski no longer has any vitality. . . . Therefore, in light of the [Pennsylvania Superior Court's] holding that the economic loss doctrine does not apply to UTPCPL claims, and the Pennsylvania Supreme Court's recognition that the economic loss doctrine is limited to negligence actions and does not bar a negligent misrepresentation claim, we conclude that the doctrine does not bar Kantor's statutory-based cause of action for fraud and misrepresentation under the UTPCPL").  This Court finds the latter line of cases more persuasive and therefore concludes that the economic loss doctrine does not apply to Plaintiff's UTPCPL claim.

   First, as the Court of Appeals for the Third Circuit itself observed in Werwinski, to

predict how the Pennsylvania Supreme Court would rule on the issue, the Court should first look to the decisional law of the Pennsylvania intermediate courts absent guidance from the Pennsylvania Supreme Court in related areas. Werwinski, 286 F.3d at 670, 675. Thus, had Knight been decided before Werwinski, the Court of Appeals for the Third Circuit would have undoubtedly considered Knight and reached a different conclusion.

Second, as pointed out by the District Court for the Eastern District of Pennsylvania, the holding in Knight is now the law in Pennsylvania and is binding on Pennsylvania lower courts unless and until it is overruled by the Pennsylvania Supreme Court. Kantor v. Hiko Energy, LLC, 100 F. Supp. 3d at 427-28. Because it is this Court's responsibility to apply Pennsylvania law to the issue at hand, Knight should control. Indeed, had this case not been removed from state court, Knight would govern. See Roberts v. NVR, Inc., No. 15-489, 2015 WL 3745178, at *7 (W.D. Pa. June 15, 2015) ("[t]o allow Defendant to remove the action to this Court and then argue for application of *Werwinski* encourages outcome-determinative forum shopping -- one of the evils that *Erie [R. Co. v. Thompkins*, 304 U.S. 64 ... (1938)] aimed to eliminate") (internal quotation and citation omitted).

Third, as this Court has recently observed, to find that the holding in Werwinski is still binding would require the Court to follow Werwinski's prediction even if the Pennsylvania Supreme Court held to the contrary, unless and until the Third Circuit Court of Appeals acknowledged the change in the law. Roberts v. NVR, Inc., 2015 WL 3745178, at *6. Such an outcome would disregard Pennsylvania law. As such, this Court concludes that it is no longer bound by Werwinski and is required to follow the precedential ruling of the Pennsylvania Superior Court in Knight which held that claims brought under the UTPCPL are not barred by

the economic loss doctrine. See Kantor v. Hiko Energy, LLC, 100 F. Supp. 3d at 427, *citing* Aceto v. Zurich Ins. Co., 440 F.2d 1320, 1322 (3d Cir. 1971) ("[a] predictive ruling by the Third Circuit is generally binding on the district court. However, when the Pennsylvania intermediate appellate courts have ruled to the contrary and their decisions have not been overruled by the state's highest court, we are no longer compelled to follow the Third Circuit's prediction. . . . It is state law, not federal law, we must follow"); Roberts v. NVR, Inc., 2015 WL 3745178, at *6 ("to conclude that a federal district court is "bound" by a prediction from its court of appeals regarding what a state supreme court would hold when state intermediate appellate courts have explicitly held to the contrary subverts the whole endeavor of predicting state law"). P&G's Motion in this regard therefore will be denied.[2]

### 3. Statute of Limitations

Finally, in the event that the Court determined that Plaintiff may proceed with his claims brought under the FDCPA, P&G asks the Court to nevertheless dismiss with prejudice the

---

[2] Even if the Court were to find that it is still bound by Werwinski and that the economic loss doctrine *applies* to the UTPCPL, it does not necessarily follow that the doctrine bars Plaintiff's claims. Under Werwinski, the doctrine serves to bar claims of intentional fraud brought under the UTPCPL except in situations where the fraud occurs outside of the contract. See Werwinski, 286 F.3d at 671. Here, despite P&G's arguments to the contrary, it does not appear that the economic loss claimed by Plaintiff as a result of P&G's allegedly fraudulent misrepresentations flows directly from the Lincoln Road Mortgage contract. Although, to be sure, but for the Lincoln Road Mortgage, P&G would not have been retained by ESB to commence the foreclosure action. The Lincoln Road Mortgage, however, was entered into by ESB and Plaintiff; Plaintiff therefore has no recourse against P&G under contract law for any harm suffered as a result of P&G's alleged misrepresentations. See Hoffman v. Wells Fargo Bank, N.A., No. 13-CV-5700, 2014 WL 6822359, at *5 (E.D. Pa. Dec. 4, 2014) ("[g]iven that there is no recourse under contract law for Plaintiff's claims, her UTPCPL claim may proceed at this stage of the litigation"). As such, it would appear that any fraudulent misrepresentations made by P&G in connection with the foreclosure action would necessarily be extraneous to the Residential Mortgage Loan and any harm resulting from those misrepresentations would be separate and distinct from any harm resulting from a breach of contract. See Cave v. Saxon Mortg. Services, Inc., 2013 WL 1915660, at *11-12 (May 9, 2013). Under these circumstances, the economic loss doctrine would not serve to bar Plaintiff's UTPCPL claim against P&G.

portions of Counts I, II and III of the Complaint to the extent that Plaintiff has alleged improper debt collection activity that occurred prior to October 15, 2014, as those claims are barred by the FDCPA's one-year statute of limitations.

It is undisputed that a plaintiff may only bring an action under the FDCPA "within one year from the date on which the violation occurs," and that the Writ of Summons naming P&G as a defendant in this case was filed on October 15, 2015. While at first blush, it would appear that only conduct that occurred within one year prior to the filing of the Writ of Summons is actionable, Plaintiff's claims revolve around on-going misrepresentations regarding the character and amount of Plaintiff's debts and the misapplication of proceeds relative to the payment of various debts. Under these circumstances, the continuing violation doctrine applies. See Devine v. Nationstar Mortg. LLC, No. 15-1361, 2015 WL 6555424, at *4 (E.D. Pa. Oct. 28, 2015), *quoting* Brown v. Udren Law Offices PC, No. 11-2697, 2011 WL 4011411, at *6 (E.D. Pa. Sept. 9, 2011) (finding that the continuing violation doctrine applies where the defendants "*falsely represented the character and legal status of the debt ...* within the one year preceding the filing of Plaintiff's Complaint") (emphasis in original). Because Plaintiff has alleged that P&G's alleged course of conduct continued up until January of 2015, and Plaintiff filed the instant Complaint within one year of that alleged violation, his claims are not time-barred and P&G's Motion in this regard will be denied. Id. at *5.

**B.     ESB's Motions to Dismiss**

Plaintiff has brought claims against ESB under the FCEUA at Counts IV and V of the Complaint, a claim for violating the UTPCPL at Count VI of the Complaint and a claim for bad faith at Count VII.

**1.      Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(7)**[3]

ESB initially argues that Plaintiff's wife, Helen Sosso, is a necessary party to the action

and that Plaintiff's failure to include her as a party is grounds for dismissal.

Federal Rule of Civil Procedure 19 (a) provides in pertinent part that:

> **(1) *Required Party.*** A person who is subject to service of process and
> whose joinder will not deprive the court of subject-matter jurisdiction must
> be joined as a party if:
>
>> **(A)** in that person's absence, the court cannot accord complete relief
>> among existing parties; or
>
>> **(B)** that person claims an interest relating to the subject of the action
>> and is so situated that disposing of the action in the person's absence
>> may:
>
>>> **(i)** as a practical matter impair or impede the person's ability to
>>> protect the interest; or
>
>>> **(ii)** leave an existing party subject to a substantial risk of
>>> incurring double, multiple, or otherwise inconsistent obligations
>>> because of the interest.

Fed. R. Civ. P. 19 (a).

Only subsection (B) is at issue here.  With respect to subsection (B)(i), ESB points to the

fact that Plaintiff and his wife were both parties to the Lincoln Road Mortgage and both were

defendants in the mortgage foreclosure action regarding the Lincoln Road property and the

confessed judgments filed in the Commercial Loan matters.  ESB then states:

> [w]here the collateral estoppel or res judicata effect of a decision in an
> underlying matter can preclude Plaintiff's wife from seeking recovery for
> damage to the property which she jointly owned or her joint interests in a
> later suit, she must be joined under Rule 19(a)(1)(i). If issue preclusion or
> collateral estoppel could be invoked against [the absent party] in other

---

[3] Federal Rule of Civil Procedure 12 (b)(7) provides that the defense of failure to join a party under Rule 19 may be
asserted by motion.  The analysis therefore revolves around Rule 19.

> litigation, continuation of the federal action could 'as a practical matter impair
> or impede [the absent party's] interests and so Rule 19(a)(1)(i) would require
> its joinder if joinder were feasible."

ECF No. 17 at 5. ESB, however, does not identify what specific interest Helen Sosso has in this matter, how a decision in this litigation would impede her ability to protect that interest, what claims or issues she would be precluded from raising or in what sort of litigation. The fact that Plaintiff and Helen Sosso were married at the time the Lincoln Road Mortgage was executed and the Commercial Loans were taken out and both were defendants in the subsequent foreclosure actions and confessed judgments does not suggest, standing alone, that Helen Sosso in a necessary party to this action. See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 409 (3d Cir. 1993) ("[m]ere presentation of an argument that issue preclusion is possible is not enough to trigger Rule 19(a)(2)(i). Rather, it must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments. . . . [Defendant's] assumption that any potential for issue preclusion compels a holding that a party is necessary under Rule 19(a)(2)(i) cannot be accepted").

Similarly, with respect to subsection (ii), ESB simply concludes that "ESB and P&G are at, 'substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest,' of Helen Sosso." Id. ESB's statement is devoid of any argument or facts that would permit this Court to agree with that conclusion or find that Helen Sosso is a necessary party under subsection (ii). See id. at 411-12. ESB's Rule 12(b)(7) Motion therefore will be denied.

## 2. ESB's Motion Pursuant to Fed. R. Civ. P. 12 (b)(6)

### a. Bad Faith (Count VII)

ESB argues that Plaintiff's claim for bad faith brought at Count VII of the Complaint should be dismissed because there is no such cognizable cause of action and no independent cause of action for breach of the implied duty of good faith.

Indeed, not only is there "no common law remedy in Pennsylvania for bad faith conduct," see Sheehan v. Anderson, No. 98-5516, 2000 WL 288116, at *4 (E.D. Pa. Mar. 17, 2000), aff'd, 263 F.3d 159 (3d Cir. 2001), citing Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 530 (3d Cir. 1997), but, as pointed out by ESB, the Superior Court of Pennsylvania has addressed the concept of good faith between lender and borrower as follows:

> [t]he courts of this Commonwealth have, in addition to the general contractual concept of "good faith," recognized a duty of "good faith" inherent in certain types of legal relationships, such as insurer and insured. *Creeger [Brick & Bldg. Supply, Inc. v. Mid-State Bank and Trust]*, 560 A.2d [151], 153 [1989]. Such an inherent duty of good faith does not extend to the lender-borrower relationship. *Id.*, 560 A.2d at 154. As we explained in *Creeger*, a lending institution does not violate a separate duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights as a creditor. *Id.*, 560 A.2d at 154. However, a borrower may plead sufficient facts to make out a claim that a lender violated its general duty of "good faith" arising out of the law of contracts. *See, e.g., Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super. 1999). Therefore, the creation of a separate duty of good faith between lender and borrower is unnecessary due to the existence of this "good faith" cause of action sounding in contract, as well as the existence of other causes of action such as fraud, slander, or interference with prospective contractual relations, which sound in tort. *Creeger*, 560 A.2d at 154.

Cable & Associates Ins. Agency, Inc. v. Commercial Nat'l Bank of Pa., 2005 Pa. Super. 186, ¶ 7, 875 A.2d 361, 364 (2005). Thus, any duty of good faith between a lender and borrower is limited to a cause of action sounding in contract. See Silvis v. Ambit Energy L.P., No. 14-5005,

___ F. Supp. 3d ___, ___, 2016 WL 1086703, at *4 (E.D. Pa. Mar. 21, 2016) ("every contract under Pennsylvania law includes a duty of good faith in performance").

Plaintiff appears to concede as much in his Responsive Brief wherein he categorizes his bad faith claim as a "valid breach of contract claim." ECF No. 27 at 7. The difficulty with Plaintiff's argument, however, is that he has not brought a breach of contract claim. He therefore cannot bring a cause of action for breach of the implied duty of good faith in the performance of the contract. As stated by the District Court for the Middle District of Pennsylvania:

> A claim for breach of the covenant of good faith and fair dealing sounds in contract law, because the covenant "arises from the contract itself." Pennsylvania law does not recognize a separate cause of action for breach of the covenant "because such a breach is merely a breach of contract."

Stewart v. SWEPI, LP, 918 F. Supp. 2d 333, 343-44 (M.D. Pa. 2013) (citations omitted). Accordingly, the Court in Stewart held that the plaintiffs' claim for breach of the covenant of good faith and fair dealing failed to state a claim upon which relief can be granted because the plaintiff did not alleged breach of contract. Id. See College v. Synergis Educ. Inc., No. 14-06966, 2015 WL 5783682, at *3 (E.D. Pa. Oct. 5, 2015), quoting Wulf v. Bank of Am., N.A., 798 F. Supp. 2d 586, 594 (E.D. Pa. 2011), citing McHolme/Waynesburg, LLC v. Wal–Mart Real Estate Bus. Tr., No. 08–961, 2009 WL 1292808 (W.D. Pa. May 7, 2009) ("the 'prevailing rule in Pennsylvania is that a claim alleging a breach of the covenant of good faith must be pled as a breach of contract claim'").

Here, Plaintiff has not even brought a claim for breach of the implied covenants of good faith and fair dealing but has simply brought a claim for bad faith. Plaintiff may not merely re-categorize the nature of his claim in his brief in response to a motion to dismiss. See

Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[i]t is well established that a plaintiff may not amend the Complaint through the brief filed in opposition to a motion to dismiss"). Moreover, even if the Court were to construe the claim as one for the breach of the covenant of good faith, Plaintiff has still failed to state claim because he has not brought a breach of contract claim against ESB. Nor has Plaintiff pled any facts to support a breach of contract claim and thus allowing Plaintiff to amend his Complaint in this regard would be futile. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). The Court therefore declines to do so. Accordingly, ESB's Motion with respect to Plaintiff's bad faith claim will be granted and Count VII of the Complaint will be dismissed.

### b. FCEUA and UTPCPL Claims (Counts IV, V and VI)

ESB reiterates P&G's argument that Plaintiff's claims brought under the FCEUA and the UTPCPL should be dismissed because they are based on the faulty premise that the Lincoln Road Mortgage was a consumer transaction or one primarily for personal, family or household purposes. See 73 P.S. § 2270.3; 73 P.S. § 201-9.2; 73 P.S. § 2270.5(a). ESB also argues, much as P&G has, that Plaintiff's UTPCPL claim should be dismissed because Plaintiff may not recover damages for emotional distress under the UTPCPL and because the remaining pecuniary damages sought by Plaintiff are barred by the economic loss doctrine.

These issues have already been addressed by the Court relative to P&G's Motion to Dismiss. Because it is clear that recovery for damages for emotional distress under the UTPCPL are barred, ESB's Motion in this regard is properly granted.

However, having found that it is unclear at this juncture whether the Lincoln Road Mortgage was for commercial purposes or for personal, family or household use and that the economic loss doctrine does not serve to bar Plaintiff's claims under the UTPCPL, and thus the FCEUA, ESB's Motion in which it argues to the contrary will be denied.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the Motion to Dismiss submitted by P&G is properly granted with respect to Plaintiff's claim for emotional distress damages sought in connection with his claim brought pursuant to the UTPCPL and denied in all other respects. The Motion to Dismiss submitted by ESB is properly granted with respect to Plaintiff's claims for bad faith and emotional distress damages sought under the UTPCPL and denied in all other respects. Accordingly, the following Order is entered:

## ORDER

AND NOW, this 15th day of July, 2016, upon consideration of Defendant P&G's Motion to Dismiss Plaintiff's Complaint, Defendant ESB's Motion to Dismiss Plaintiff's Complaint, Plaintiff's Responses to the two Motions and Defendants' Reply Briefs, IT IS HEREBY

---

[4] The Court notes here that, in an effort to show that the Lincoln Road Mortgage was used for commercial purposes rather than for personal, family or household use, ESB not only refers to the Lincoln Road HUD-1 and ESB's Bank Loan Memorandum which P&G submitted in conjunction with its Motion to Dismiss, but also cites to the Loan Application executed by the Sossos which states under the "Purpose of Refinance" section: "Consolidate 1st and 2nd/Cash out for business." ECF No. 71-1 at 2. As previously found by this Court in addressing P&G's Motion to Dismiss, it is not at all clear that the Loan Application, like the HUD-1 and Bank Memorandum, are integral to Plaintiff's claims which revolve around Defendants' conduct in the foreclosure and debt collection proceedings. Although they are certainly relate to the Lincoln Road Mortgage it cannot be said that Plaintiff's claims are based on them. Further, the Loan Application indicates that the first purpose of the loan was to "consolidate" with the secondary purpose being business related. While it appears that the Sossos were supposed to receive a cash out payment of $388,742.02, and there is some indication that it would be used for commercial purposes, see St. Hill v. Tribeca Lending Corp., 403 F. App'x at 720-22, it does not necessarily follow that they in fact received those proceeds or that they were actually used for business purposes. Under these circumstances, as before, the Court declines to conclude at this juncture that the Sossos' primary purpose of obtaining the Lincoln Road Mortgage was for commercial purposes.

ORDERED that P&G's Motion to Dismiss, ECF No. 2, is granted in part and denied in part: the

Motion is granted with respect to Plaintiff's claim for emotional distress damages sought in

connection with his claim brought pursuant to the UTPCPL and denied in all other respects.  IT

IS FURTHER ORDERED that ESB's Motion to Dismiss, ECF No. 16, is granted in part and

denied in part: the Motion is granted with respect to Plaintiff's claims for bad faith and emotional

distress damages sought under the UTPCPL and denied in all other respects.

BY THE COURT:

/s/ Maureen P. Kelly_____
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:    All counsel of record by Notice of Electronic Filing